# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK MELVIN SLACK, | 1:03-cv-05038-TAG HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1) |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT |
| ROBERT HERNANDEZ, Warden, | |
| Respondent. | |

Petitioner Frank Melvin Slack (hereinafter "Petitioner") is a state prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

Petitioner is an inmate of the California Department of Corrections, convicted by the Superior Court for the County of Fresno and sentenced to serve six years for commission of a lewd and lascivious act upon a child under the age of fourteen years, a violation of California Penal § 288(a). (Doc. 15, Exh. A.; CT 249.) [1]

Petitioner timely appealed his conviction to the California Court of Appeal, Fifth Appellate District (the "5th DCA"), alleging, inter alia, that the state court erred in refusing to give the jury a "pinpoint" instruction relating the defense of accident or misfortune to the burden of proof, and that the state court erred in instructing the jury pursuant to CALJIC No. 17.41.1. (Doc. 15, Exh. B; CT 250.) Although it reversed the trial court finding that Petitioner must submit to an AIDS test, the 5th DCA otherwise rejected Petitioner's claims on the merits and affirmed the judgment in its entirety. (Doc. 15, Exh. D).

---

[1] References to the Clerk's Transcript in Petitioner's direct appeal in state court will be cited as "CT page," while references to the Reporter's Transcript will be cited as "RT page."

1

Petitioner filed a petition for review with the California Supreme Court, which summarily denied Petitioner's request on November 13, 2002. ( Doc. 15, Exh. E).

On December 20, 2002, Petitioner filed the instant petition for writ of habeas corpus in the United States District Court for the Eastern District of California. (Doc. 1). Respondent filed his answer filed on November 3, 2003. (Court Doc.15).

## FACTUAL BACKGROUND

The Court hereby adopts the facts as summarized by the 5th DCA:

> In December 1997, appellant resided with his sister, her boyfriend and their three young children. One morning appellant was playing with his sister's five-year-old daughter, S.H. Appellant was tickling S.H. and her brother A. A. noticed that appellant pulled a blanket over himself and S.H. while tickling her and A. thought that was "weird."
>
> S.H.'s mother, D.D., testified that A. came upstairs while she was combing her hair and told her that appellant had been tickling S.H. while there was a blanket pulled over their heads. A. asked appellant what he was doing, but appellant told A. to be quiet. A. appeared to be upset while relaying this story to his mother.
>
> D.D. investigated the situation by speaking with S.H. S.H. told her mother that appellant had been tickling her ribs while the two were covered with a blanket. While tickling her, appellant put his hand underneath her pajamas and underwear and rubbed her "private." Appellant asked her "Does that feel good?" and she replied that it did not. Appellant then let go of S.H. and went into the bathroom. S.H. was crying and scared when relaying the incident.
>
> D.D. called S.H.'s father, R.H., and told him what transpired. When R.H. came home from work he spoke with his daughter about the incident. She told him that appellant had touched her vagina while she was with him underneath a blanket. After hearing this, R.H. confronted appellant with the accusation; appellant shrugged his shoulders and said that he did not do anything. R.H. questioned his daughter once again and she again stated that appellant had touched her inappropriately. R.H. then became angry and confronted appellant again, this time pushing him to the floor and telling him that he was "gonna pay for this." R.H. then told D.D. to take the children to a neighbor's house and he called the police.
>
> When the police arrived, Detective Harris interviewed S.H. about the incident. S.H. explained that appellant had touched her vagina while she was underneath a blanket with him. After touching her, appellant went into the bathroom. Detective Harris took appellant into custody based upon the allegations, as well as for an outstanding warrant. After being advised of his <u>Miranda</u> rights, appellant agreed to speak with the detective about the incident. Appellant denied the allegations, although he admitted he could have accidentally touched the victim's genital area with his elbow while he was tickling her. Appellant denied any skin to skin contact. Appellant later stated that he might have touched S.H.'s genital area with his hand through her clothing when he picked her up.

(Doc. 15, Exh. D, pp. 2-3.)

**DISCUSSION**

**I.  Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375, 120 S.Ct. 1495, 1504, n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (quoting Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996)), *cert. denied,* 520 U.S. 1107  (1997), *overruled on other grounds by* Lindh, 521 U.S. 320(holding AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is governed by the AEDPA.

**II.  Legal Standard of Review**

Under the AEDPA,  state court's decision denying relief may be reversed only if that decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); Van Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000), *overruled on other grounds by* Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166 (2003).

  **A.**  **Habeas Review of State Court Questions of Law**

Challenges to purely legal questions resolved by the state court are reviewed under 28 U.S.C. § 2254(d)(1). "The question on review is (a) whether the state court's decision contradicts a holding of the United States Supreme Court; or (b) whether the state court, after identifying the correct governing Supreme Court holding, then unreasonably applied that principle to the facts of the

3

prisoner's case. " Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004).

The AEDPA denies habeas relief on any claim adjudicated on the merits in state court unless the state court proceeding resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the United States Supreme Court. § 2254(d)(1)'s reference to "clearly established Federal law" means the holdings (not dicta) of the Supreme Court's decisions, at the time of the state court's decision. Lockyer, 538 U.S. at 412. "A state court's decision is 'contrary to' clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases or if the state court confronts a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court and, nevertheless, arrives at a result different from its precedent." Lambert, 393 F.3d at 974 (*citations omitted*). "The 'unreasonable application' standard captures those cases in which 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id., quoting Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495 (2000). The Supreme Court instructs that in applying the "unreasonable application" standard, a federal habeas court should ask whether the state court's application of clearly established federal law was objectively unreasonable. Taylor, 529 U.S. at 413. Thus, a habeas writ cannot issue if the federal habeas court in its own judgment concludes that the state court decision applied clearly established federal law incorrectly; the application must also have been objectively unreasonable. Id.

### B.     Review of State Court Questions of Fact

Federal habeas challenges to purely factual questions determined by the state courts are reviewed under 28 U.S.C. §§ 2254(d)(2); "[t]he question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record. [F]act-based challenges founded on evidence raised for the first time in federal court are reviewed under § 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings." Lambert, 393 F.3d at 978. Thus, under the AEDPA, state court factual determinations are presumed correct in the absence of clear and convincing evidence to the

contrary. In addition, state court decisions which are adjudicated on the merits and based on factual determinations will not be overturned on habeas review under AEDPA unless the decisions were objectively unreasonable in light of the evidence presented in the state court proceedings. Lockyer, 538 U.S. at 75.

The Ninth Circuit Court of Appeals recently interpreted §§ 2254(d)(2) and 2254(e)(1)[2], and held both provisions apply to challenges supported by separate categories of evidence. Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004); Lambert, 393 F.3d at 971-973. In Taylor, the Ninth Circuit held that the "unreasonable determination" clause of § 2254(d)(2) applies to intrinsic review of a state court's process, i.e., circumstances in which a petitioner challenges the state court's findings based entirely on the state court record. Id. at 999-1000. In Taylor, the Ninth Circuit also held that § 2254(e)(1) applies to challenges based on extrinsic evidence, i.e., evidence presented for the first time in federal court. Id. As explained in Taylor: "[I]t is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision; rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." Id. (citations omitted). Likewise, mere doubt as to the adequacy of the state court's findings of fact is insufficient; "we must be satisfied that any appellate court to whom the defect [in the state court's fact-finding process] is pointed out would be unreasonable in holding that the state court's fact-finding process was

---

[2] §§ 2254(d)(2) and 2254(e)(1) address whether, and to what extent, a federal district court is bound by state court findings on any of the dispositive factual questions presented in a federal habeas petition. These statutes provide as follows:

> (D) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
> . . .
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
>
> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgement of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption by clear and convincing evidence.

1  adequate. Id.; Lambert, 393 F.3d at 972.

2  In the event a habeas petition presents no intrinsic challenge to a state court's factual determinations, or if it does, the factual determinations survive an intrinsic review, the factual determinations are then "dressed in a presumption of correctness, which [ ] helps steel them against any challenge based on extrinsic evidence." Id.  State court factual findings "may be over-turned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and convincing proof that the state-court finding is in error." Id.

**C.  Review of State Court Mixed Questions of Law and Fact**

A mixed question of law and fact is one that requires the application of legal principles to historical and other facts. § 2254(e)(1)'s presumption of correctness is restricted to pure questions of historical fact. Lambert, 393 F.3d at 976. However, "[s]tate decisions applying law to facts are governed by § 2254(d)(1); however, factual findings underlying the state court's conclusions on the mixed issue are accorded a presumption of correctness." Id., citing Jeffries v. Wood. 114 F.3d 1484, 1498 (9th Cir. 1997) (AEDPA "further restricts the scope of federal review of mixed questions of law and fact. De novo review is no longer appropriate; deference to the state court factual findings is."), citing Rupe v. Wood, 93 F.3d 1434, 1444 (9th Cir. 1997) (voluntariness of confession is a legal question not entitled to presumption of correctness but the state court's finding that no threats or promises were made was "essentially a factual conclusion, which is entitled to a presumption of correctness").

A federal court reviewing a state court decision based on a mixed question of law and fact must first separate the legal conclusions from its underlying factual determination. "Fact-finding underlying the state court's decision is accorded the full deference of §§ 2254(d)(2) and (e)(1), while the state court's conclusion as to the ultimate legal issue–or the application of federal law to the factual findings–is reviewed per § 2254 (d)(1) in order to ascertain whether the decision is 'contrary to, or involved an unreasonable application of, clearly established' Supreme Court precedent." Lambert v. Blodgett, 393 F.3d at 977-978.

///

///

**III. Review of Petitioner's Claims**

    **Ground One:**    **The State Court Violated Petitioner's Sixth and Fourteenth Amendment Rights By Refusing To Instruct the Jury With A "Pinpoint" Jury Instruction.**

Petitioner contends that he was denied his rights under the Sixth and Fourteenth Amendments when the state court refused to instruct the jury with the defense's requested "pinpoint" instruction regarding Petitioner's defense of accident. (Doc. 1, p. 5). Petitioner is incorrect.

    A. <u>Procedural History</u>.

At trial, Petitioner requested that the trial court instruct the jury with a pinpoint instruction that purportedly would have related his defense of accidental or inadvertent touching of the victim to the prosecution's burden of proof. (CT 242). Specifically, Petitioner requested that the court modify CALJIC 10.41, the instruction defining the elements of the offense of lewd or lascivious conduct with a child under the age of 14 years[3], to include the following language:

> Whether the touching is lewd or lascivious and "lewdly" performed depends upon the sexual motivation and intent with which it is committed. *Inadvertent or casual*

---

[3]CALJIC No. 10.41 provides as follows:

"Defendant is accused in Count ___ of having committed the crime of lewd act with a child in violation of section 288, subdivision (a) of the Penal Code.

Every person who willfully commits any lewd or lascivious act upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the specific intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of that person or the child, is guilty of the crime of committing a lewd or lascivious act upon the body of a child in violation of Penal Code section 288, subdivision (a).

A 'lewd or lascivious act' is defined as any touching of the body of a child under the age of 14 years with the specific intent to arouse, appeal to, or gratify the sexual desires of either party. To constitute a lewd or lascivious act, it is not necessary that the bare skin be touched. The touching may be through the clothing of the child.

The law does not require as an essential element of the crime that the lust, passions, or sexual desires of either of such persons be actually aroused, appealed to, or gratified.

It is no defense to this charge that a child under the age of 14 years may have consented to the alleged lewd or lascivious act.

In order to prove this crime, each of the following elements must be proved:

1. A person touched the body of a child;
2. The child was under 14 years of age; and
3. The touching was done with the specific intent to arouse, appeal to, or gratify the lust, passions, or sexual desires of that person or the child."

7

*non-offensive touching that is unaccompanied by direct or circumstantial evidence of an intent to arouse, appeal to, or gratify whether the lusts, passions or sexual desires of the defendant or the child are insufficient to qualify as a lewd and lascivious touching.* If you have a reasonable doubt as to whether [insert act or omission which is charged] was committed with the required sexual motivation and intent, you must resolve that doubt in favor of the defendant and return a verdict of not guilty.

(Id.).(Emphasis supplied.)

The trial court agreed to modify CALJIC No. 10.41 by including the sentence italicized above, but refused to instruct the jury on the first and third sentences. (CT 145; RT 399.) Moreover, the state court instructed the jury with CALJIC No. 3.31, which instructed the jury that unless there is a union of "conduct and a certain specific intent" in Petitioner's mind, the crime is not committed. (RT 391-392; CT 125.) The court also instructed the jury on CALJIC No. 2.02, which instructs jurors that if evidence of a specific intent permits two reasonable interpretations, "one of which points to the existence of the [specific intent] and the other to its absence," the jurors must "adopt that interpretation which points to its absence." (RT 392; CT 126.) Finally, immediately prior to the giving of the modified CALJIC No. 10.41, the jury was instructed with CALJIC No. 2.90, the general instruction on the prosecution's burden of proof. (RT 398; CT 144.)

B.  No Federal Law Violation Occurred.

Petitioner's burden in these habeas proceedings is to establish that the state court's failure to include in the modified CALJIC 10.41 the two elided sentences quoted above rose to the level of a federal constitutional error. Generally, the issue of whether a jury instruction is a violation of state law is neither a federal question nor a proper subject for habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 68 (1991). ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) (O'Connor, J., concurring) ("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Thus, normally, a claim that challenges the propriety of a jury instruction under state law cannot reasonably be construed to allege a deprivation of federal rights. Van Pilon v. Reed, 799 F.2d 1332, 1342 (9th Cir. 1986). Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989).

A challenge to a jury instruction solely as an error under state law does not normally state a claim cognizable in a federal habeas corpus action. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991). To obtain federal collateral relief for errors in the jury charge, the petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See id. at 72.  The constitutional significance of the omission of an instruction will depend upon the evidence in the case and the overall instructions given to the jury. See Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995); see also Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Additionally, the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Id. The Court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. See United States v. Frady, 456 U.S. 152, 169 (1982), *citing* Henderson v. Kibbe, 431 U.S. at 154. Furthermore, even if it is determined that the instruction violated the petitioner's right to due process, the petitioner can only obtain relief if the unconstitutional instruction had a substantial influence on the conviction and thereby resulted in actual prejudice under Brecht v. Abrahamson, 507 U.S. 619, 637 (whether the error had a substantial and injurious effect or influence in determining the jury's verdict.). See Hanna v. Riveland, 87 F.3d 1034, 1039 (9th Cir. 1996).

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. Henderson v. Kibbe, 431 U.S. at 154. Moreover, an individual such as Petitioner in this case whose claim involves the *omission* of an instruction "bears an especially heavy burden," because an omission is less likely to be prejudicial than a purported misstatement of the law. Id. at 155.

Petitioner proffered the modification in order to further explain to the jury "the defense theory of inadvertent, casual, or non-offensive touching." (CT 242.)  Petitioner also wanted to relate his theory of the defense directly to the prosecution's burden of proof beyond a reasonable doubt. (CT 242-243.)  Petitioner argued that he had a right to instruct the jury on his theory of the case. (Id.)

///

Here, the state court agreed to modify CALJIC No. 10.41 to include the language explaining the defense theory of the case, i.e., "Inadvertent or casual non-offensive touching that is unaccompanied by direct or circumstantial evidence of an intent to arouse, appeal to, or gratify whether the lusts, passions or sexual desires of the defendant or the child are insufficient to qualify as a lewd and lascivious touching." This defense theory of casual or non-offensive touching was also argued by defense counsel in his closing statement to the jury. (RT 374; 376.)  Clearly, then, the revised instruction, together with the other instructions and arguments of counsel, adequately informed the jury of the defense theory of the case.

Thus, the Court's only concern in Ground One is whether the omission of the *other* two sentences somehow violated Petitioner's constitutional rights. The Court concludes that it did not.

The sentence explaining that "[w]hether the touching is lewd or lascivious and 'lewdly' performed depends upon the sexual motivation and intent with which it is committed," is adequately summarized in other instructions given by the state court. The jury was instructed that to find Petitioner guilty of the crime charged, there "must exist a union or joint operation of act or conduct and a certain *specific intent* in the mind of the perpetrator." (CT 125.) The jury was also instructed that one element of the charged crime was that Petitioner had "the *specific intent* to arouse, appeal to, or gratify the sexual desires" of either himself or the victim. (CT 145-146.)   Moreover, the jury was instructed that if evidence of specific intent permits two reasonable interpretations, and that one of those interpretations points to the existence of *specific intent* while the other points to its absence, the jurors must adopt that interpretation which points to its absence. (CT 126.)(Emphasis supplied.)

Finally, the fact that jurors were instructed with Petitioner's own modifying language that the very type of touching Petitioner claimed in his defense, i.e., casual or non-offensive touching unaccompanied by the specific intent to arouse, was *insufficient* to convict Petitioner, given in combination with the other instructions referred to above, adequately conveyed the concept contained in the omitted first sentence, i.e., that Petitioner's intent in touching the victim was a prerequisite to a conviction. Thus, the omitted first sentence was merely redundant and its omission could not have deprived Petitioner of due process.

///

10

The second omitted sentence provided as follows: "If you have a reasonable doubt as to whether [insert act or omission which is charged] was committed with the required sexual motivation and intent, you must resolve that doubt in favor of the defendant and return a verdict of not guilty." This sentence, however, merely reaffirmed that the specific intent element, as with all elements of the crime, must be found beyond a reasonable doubt, a subject about which the jury was already informed by the reasonable doubt instruction read to the jury immediately before the contested instruction. Indeed, that instruction virtually parrots the omitted sentence above by instructing, "...in case of a reasonable doubt whether [his][her] guilt is satisfactorily shown, [he][she] is entitled to a verdict of not guilty." (CT 144.) Thus, again, the rejected language was merely duplicative of language given elsewhere in the instructions. In sum, the two omitted sentences were adequately covered by other instructions given to the jury.

The 5th DCA reached this same conclusion in its opinion:

> These instructions, in combination, adequately informed the jury that the prosecution was required to prove, beyond a reasonable doubt, that the touching in this case was not accidental. Petitioner's requested instruction merely restated this principle. Therefore, the trial court was justified in denying the request as duplicative.
>
> Additionally, we note that there was no danger, as Petitioner suggests, the jury would mistakenly believe that Petitioner was required to prove the touching was accidental. The jury was never instructed that Petitioner carried the burden of proof on any issue. Rather, the jury was repeatedly informed that it was the prosecution who bore the burden of proving each element of the crime, and was further told that an accidental touching was insufficient to prove the crime. Thus, we conclude that the instructions were proper.

(Doc. 15, Exh. D, pp. 5-6.)(Citations omitted.)

Based on the foregoing analysis, Petitioner has failed to demonstrate that his trial was rendered fundamentally unfair by the state court's failure to include all of his proposed modifications of CALJIC No. 10.41. See McGuire, 502 U.S. at 72; see also Van Pilon, 799 F.2d at 1342.

Moreover, even if the failure to give the instruction were error, it was harmless under Brecht. Petitioner was given a full and fair opportunity to present evidence in support of his defense, including cross-examination of prosecution witnesses. Other than the two instructional arguments raised in this petition, Petitioner does not suggest that other errors, such as unfair limitation on cross-examination or presentation of defense evidence, infected this trial. Nor does Petitioner point to any

11

evidence in the record that the jury was confused by CALJIC No. 10.41 as given or that, during deliberations, jurors had questions or concerns about its language or about the prosecution's burden of proof.[4] In sum, Petitioner points to no "actual prejudice" that arose from this instruction. Thus, any error is harmless. Brecht, 507 U.S. at 622- 623, 638.

Here, as a whole, the instructions adequately instructed the jury regarding the burden of proof, the defense of accidental or non-offensive touching, and the relation of that defense to the reasonable doubt instruction. The jury is presumed to have followed those instructions. Weeks v. Angelone, 528 U.S. 225, 234 (2000). Accordingly, the state court decision is not contrary to nor an unreasonable application of clearly established federal law. 28 U.S.C. § 2254(d). Hence, Ground One must be denied.

**Ground Two:   The the trial court's decision to give CALJIC No. 17.41.1 violated Petitioner's Sixth and Fourteenth Amendment rights.**

Petitioner next argues that his Sixth and Fourteenth Amendment rights were violated when the trial court instructed the jury pursuant to CALJIC No. 17.41.1. (Doc. 1, p. 5.)[5] Petitioner is again mistaken.

As a preliminary matter, the Court notes that, as was true with Ground One, an allegation that a jury instruction is incorrect under state law does not form a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. at 67 ("We have stated many times that federal habeas corpus relief does not lie for errors of state law."). Thus, the Court must determine whether the challenged instruction was so egregious that the resulting conviction violates due process. Kibbe, 431 U.S. at 154.

---

[4] Petitioner's Opening Brief in the 5th DCA contends that the refusal to give the modified instruction as requested should be presumed prejudicial, that it diluted the prosecution's burden of proof, and that it prevented the jurors from properly deliberating on this issue. (Doc. 15, Exh. B, pp. 11-12.) Those generalized arguments have already been addressed above, however, and absent other, more concrete, indications in the record that the instruction, as worded, was "actually prejudicial," the Court cannot afford Petitioner habeas relief. Brecht, 507 U.S. at 622-623; 638.

[5] Petitioner does not explain in his petition how the giving of this state court instruction violated his federal constitutional rights. However, the 5th DCA interpreted Petitioner's contention to be that the giving of CALJIC No. 17.41.1 improperly chilled jury deliberations and interfered with the jury's right to nullify the law. (Doc. 15, Exh. D, p. 7.) Similarly, the Petition for Review filed in the California Supreme Court on Petitioner's behalf argues that the giving of CALJIC No. 17.41.1 interfered with the jury's right to conduct private deliberations and chilled jurors' free and frank discussions. (Doc. 15, Exh. E, pp. 15-21.) Accordingly, the Court will address these federal concerns.

12

Regarding the trial court's instruction on CALJIC 17.41.1., the jury was instructed as follows:

> The integrity of a trial requires that jurors, at all times during their deliberations, conduct themselves as required by these instructions. Accordingly, should it occur that any juror refuses to deliberate or expresses an intention to disregard the law or to decide the case based on penalty or punishment, or any [other] improper basis, it is the obligation of the other jurors to immediately advise the Court of the situation.

(CT 195; RT 401). Relying upon People v. Engleman, 28 Cal.4th 436 (2002), in which the California Supreme Court upheld a conviction in which the defendant had challenged the constitutionality of CALJIC No. 17.41.1, the 5th DCA held that the instruction "does not infringe upon defendant's federal or state constitutional right to trial by jury or his state constitutional right to a unanimous verdict." (Doc. 15, Exh. D, p. 7.)

Subsequent to Petitioner's trial, the California Supreme Court decided Engleman, in which the Court directed state trial courts not to give CALJIC No. 17.41.1 in the future based on the Court's concern that the instruction "has the potential to intrude unnecessarily on the deliberative process and affect it adversely–both with respect to the freedom of jurors to express their differing views during deliberations, and the proper receptivity they should accord the views of their fellow jurors." Engleman, 28 Cal.4th at 440-441, 449.

Nevertheless, the Court held that the instruction did not violate the defendant's Sixth Amendment right to a jury trial because the constitutional right does not require "absolute and impenetrable secrecy for jury deliberations in the face of an allegation of juror misconduct," or "constitute [ ] an absolute bar to jury instructions that might induce jurors to reveal some element of their deliberations." Id. at 443.

As a preliminary matter, this Court notes that Petitioner has not cited, and the Court has been unable to locate, any federal authority, let alone United States Supreme Court authority, holding that CALJIC No. 17.41.1, or an instruction substantially similar to it, violates a defendant's federal constitutional rights under the Sixth Amendment. Absent such a "clearly established" federal law, the Court has no basis for either finding or concluding that the California courts' rejection of Petitioner's claim either was contrary to or involved an unreasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1).

Turning to the merits of Petitioner's argument, the instruction here does not, as Petitioner asserts, impinge on the ability of each juror to deliberate independently and reach their own verdict. The instruction does not require that each word uttered in deliberations be reported or that holdout jurors be singled out and reported to the trial judge. Rather, the instruction attempts to ensure the proper functioning of the jury by enabling the trial court to investigate jury misconduct when necessary. The instruction on its face does not misstate the law. A juror may not refuse to deliberate, may not disregard the law, and may not decide the case by relying on an improper basis.

The contention that the instruction chills the "independent" deliberations of jurors by forcing jurors to essentially police one another is both abstract and speculative. The instruction only authorizes the jury to report a juror who is refusing to deliberate or follow instructions, not a juror who is simply dissenting from the majority. If jurors were to report a juror to the court simply on the basis of dissenting, the jurors would not be following the instruction as written, as they are presumed to do. See Aguilar v. Alexander, 125 F.3d 815, 820 (9th Cir. 1997).

Moreover, the instruction contains no suggestion that jurors who disagree with other jurors will be punished or suffer negative consequences. While a reasonable juror might infer from the instruction that the trial court would investigate any reports of misconduct, it would be unreasonable for such jurors to also infer that the trial court would in some fashion mete out punishment to jurors without first fully investigating such allegations to ensure that they were well-founded.

Petitioner's claim that the instruction deprived him of his right of jury nullification is equally unavailing. Jury nullification may be a reality in the courtroom, but it is not a right under the Constitution, laws, or treaties of the United States. See Crease v. McKune, 189 F.3d 1188, 1194 (10th Cir. 1999)(noting no right to jury nullification in the context of federal habeas review); cf. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992)(federal defendants are not entitled to jury nullification instructions).[6] Petitioner has not cited any Supreme Court authority for the proposition that he has a federal constitutional right to jury nullification, much less to an instruction

---

[6]In California, jurors have the <u>ability</u> to nullify or disregard the court's instructions and evidence, and to return a verdict contrary to the law and the evidence, but they have no <u>right</u> of nullification regarding the applicable legal principles which govern their role as factfinders. People v. Williams, 25 Cal.4th 441, 454 (2001).

to the jury itself that it may disregard the law in its deliberations. Accordingly, there is not, in this regard, any clearly established federal law for the state court's decision either to contradict or to unreasonably apply.

In the absence of any Supreme Court precedent to the contrary, it simply cannot be said that the mere giving of CALJIC No. 17.41.1 was a violation of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 2254(d)(1); Brewer v. Hall, 378 F.3d 952 (9th Cir. 2004)(affirming denial of habeas petition based upon giving of CALJIC 17.41.1 because of absence of Supreme Court precedent clearly establishing that the instruction is unconstitutional).

In order to be entitled to federal habeas corpus relief, Petitioner must show that CALJIC No. 17.41.1 by itself so infected the entire trial that the resulting conviction violated due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). He has not done so, nor has he shown that there is a "reasonable likelihood" that the jury applied the instruction in a manner that violated the Constitution. See id.

Moreover, even assuming arguendo that the challenged instruction did violate Petitioner's Sixth Amendment rights as a matter of clearly established Supreme Court law, the Court has no basis for finding or concluding that the giving of the instruction had a substantial and injurious effect or influence in determining the jury's verdict. See Brecht, 507 U.S. at 637. Considered as a whole, the instructions given to the jury accurately stated the law and advised the jurors that it was their duty to decide the case based on their individual opinions.

Petitioner's allegations regarding the effect of the challenged instruction on jury deliberations are unsupported by the record and conclusory. Conclusory allegations do not warrant habeas relief. See Jones v. Gomez, 66 F.3d 199, 204-05 (9th Cir.1995) (holding that conclusory allegations made with no reference to the record or any document do not merit habeas relief). Petitioner is unable to demonstrate any act on the part of the jury which would suggest that the instruction so infected the entire trial so that his conviction violates due process. Indeed, there is no indication in this record that any problems even arguably attributable to the giving of CALJIC No. 17.41.1 (e.g., jury deadlock, conflicts regarding holdout jurors, refusal to follow the law, stifled deliberations, or

intrusion by the trial judge into the deliberative process), occurred during jury deliberations. Nor does Petitioner assert that anything of this ilk occurred.[7]

The state court resolution of this claim was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, nor did the state court resolution result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d). Accordingly, the Ground Two must be denied.

**ORDER**

Accordingly, the Court HEREBY ORDERS that Petitioner's Petition for Writ of Habeas Corpus (Court Doc. 1), is DENIED with prejudice.

The Clerk of the Court is DIRECTED to enter judgment for Respondent and close the file.

IT IS SO ORDERED.

Dated:   **March 21, 2006**                                    **/s/ Theresa A. Goldner**
**j6eb3d**                                                        UNITED STATES MAGISTRATE JUDGE

---

[7]Indeed, Petitioner's appellate counsel argued only that giving the instruction, in general, was a structural error that required reversal per se. (Doc. 15, Exh. B, p. 17; Exh. E, p. 20.) Petitioner's counsel never contended that the circumstances of this particular deliberations demonstrated that the instruction was actually prejudicial.